**Manjola LUMAJ, Petitioner,**

v.

**Alberto GONZALES, Attorney General, Respondent.**

No. 06–3041.

United States Court of Appeals, Sixth Circuit.

Aug. 25, 2006.

BEFORE: MOORE and SUTTON, Circuit Judges; and KATZ, District Judge.*

PER CURIAM.

Petitioner Manjola Lumaj is a native and citizen of Albania. She seeks review of a Board of Immigration Appeals ("the BIA" or "the Board") decision dismissing her appeal of an order in which the Immigration Judge ("IJ") denied her application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). The BIA found that Petitioner's asylum application was untimely and, though she testified credibly, she was not entitled to withholding of removal and CAT protection. For the following reasons, this Court denies the petition for review.

## I. Factual Background

Petitioner claims she left Albania on October 10, 2002, and traveled to Greece,

---

* The Honorable David A. Katz, United States District Judge for the Northern District of Ohio, sitting by designation.

where she obtained a Greek passport and flew to Toronto, Canada, arriving on October 12. She claims she entered the United States late on October 15, 2002, crossing from Windsor, Canada, into Detroit, Michigan, in the back of a minivan driven by two men she did not know. At a gas station in Detroit, Petitioner returned the Greek passport to the drivers and met up with her aunt, a political asylee living in Michigan. Once in the United States, she lived with her aunt, who testified that she picked Petitioner up from a gas station in Detroit on October 15, 2002, following instructions from an anonymous caller. Petitioner's aunt did not see Petitioner actually cross the border. Petitioner did not request asylum in Greece, though she has other relatives living there, nor in Canada.

Petitioner requested asylum in this country on September 18, 2003. A month later, the Immigration and Naturalization Service (since renamed, but referred to herein as "the INS") began removal proceedings by issuing a notice to appear. Petitioner conceded her removability at a December 12, 2003, hearing, with counsel present. She requested asylum and withholding of removal under the Immigration and Nationality Act ("INA") and the United Nations Convention Against Torture ("CAT").

On August 23, 2004, the IJ conducted a merits hearing. Petitioner presented a copy of her Albanian Democratic Party membership card, along with two birth certificates showing her date of birth as October 12, 1982, and a Michigan marriage license showing her birth date as October 14, 1982. She also told her story of persecution in Albania.

Petitioner was a member of the Youth Forum of the Democratic Party. Part of her role was to recruit new members into the organization; she also participated in protests against the Socialist government. On September 1, 2000, Petitioner was returning from a political meeting of local women and girls when she was taken to jail and questioned about her involvement with the Democratic Party. Her interrogators slapped her on the face, pulled her hair, beat her, and grabbed her. They detained her overnight, and told her before releasing her in the morning that they would jail her for several years if she did not stop working for the Democratic Party.

Then, on June 22, 2001, two days before an election, Petitioner related that she was again arrested and detained for one day at the Lezha police station, where she was again beaten and told to stop protesting. She was brought back to the police station for more questioning several times during July and August of that year, each session lasting two or three hours. In May of 2002, Petitioner was taken in again for questioning about her activities with the Democratic Party, and told the police she would not stop fighting for her rights. In June, the police called her in and told her they would kill her and her family if she did not stop her activities.

On September 5, 2002, the police came to Petitioner's house, allegedly looking for illegal firearms. She claims the police mistreated her and her family, and tried to take Petitioner to the police station, but neighbors intervened, and the police left without her. Five days later, while Petitioner was away at a relative's house, three masked men tied up her family around a bed and pointed guns at them. This last incident terrified petitioner and she decided to leave Albania. Petitioner said she is scared of the police and believes they will harm her if she returns.

█ The IJ pretermitted Petitioner's asylum application for failure to prove she filed it within one year after entering the

country, and denied her request for withholding of removal and CAT protection. The IJ found that, though Petitioner testified credibly and her claim fell under a protected ground—political opinion—she failed to show entitlement to relief. Petitioner timely appealed to the BIA, which dismissed the appeal on December 15, 2005, in a short opinion that adopted the IJ's reasoning. Petitioner now seeks review of the BIA's order. However, Petitioner does not argue her CAT claim on appeal, and therefore waives it. *Shkabari v. Gonzales*, 427 F.3d 324, 327 n. 1 (6th Cir.2005).

## II. Asylum

■ An applicant must request asylum within one year after entering the United States, unless she can demonstrate changed or extraordinary circumstances. 8 U.S.C. § 1158(a)(2)(B), (D). This Court may review the denial of an asylum application for untimeliness where the appeal seeks review of constitutional claims or matters of statutory construction, but it lacks jurisdiction to do so where the appeal seeks review of discretionary or factual questions. *Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir.2006). Petitioner's case falls into the latter category: the IJ and the BIA found Petitioner's asylum application untimely because she failed to establish the date of her arrival in the United States by clear and convincing evidence, *see* 8 U.S.C. § 1158(a)(2)(D), and therefore could not show that she filed within one year. Petitioner did not allege changed or extraordinary circumstances. Therefore, this Court may not review the denial of Petitioner's asylum application.

## III. Withholding of Removal

This Court reviews the denial of withholding of removal under the substantial evidence test. *See Allabani v. Gonzales,*

402 F.3d 668, 674 (6th Cir.2005). The Court may not reverse the BIA's determination simply because it would have ruled differently. *Klawitter v. INS*, 970 F.2d 149, 151–52 (6th Cir.1992). Rather, the BIA's decision that Petitioner "is not eligible for admission to the United States is conclusive unless manifestly contrary to law." 8 U.S.C. § 1252(b)(4)(C). To reverse the decision that Petitioner failed to meet her burden regarding withholding of removal, this Court must find that the evidence "not only supports a contrary conclusion, but indeed *compels* it." *Almuhtaseb v. Gonzales*, 453 F.3d at 749 (6th Cir. 2006) (quoting *Yu v. Ashcroft*, 364 F.3d 700, 702–03 (6th Cir.2004) (omitting internal quotation)). Where, as here, the BIA adopts the IJ's reasoning, this Court reviews the IJ's decision. *Denko v. INS*, 351 F.3d 717, 723 (6th Cir.2003).

The INA forbids removal to a country "if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). To be eligible for withholding of removal under the INA, Petitioner must show there is a "clear probability," i.e., that it is "more likely than not," that she will be persecuted on account of her political opinion if she is returned to Albania. *Liti v. Gonzales,* 411 F.3d 631, 640–41 (6th Cir.2005). "Persecution is an extreme concept that does not include every sort of treatment our society regards as offensive. [Rather, it] entails punishment or the infliction of suffering or harm, but harassment or discrimination without more does not rise to the level of persecution." *Ali v. Ashcroft*, 366 F.3d 407, 410 (6th Cir.2004) (internal quotations and citations omitted).

While credible testimony from an applicant for withholding of removal may be

sufficient to sustain her burden of proof without corroboration, 8 C.F.R. § 208.16(b), "where it is reasonable to expect corroborating evidence for certain alleged facts pertaining to the specifics of an applicant's claim, such evidence should be provided.... The absence of such corroborating evidence can lead to a finding that an applicant has failed to meet her burden of proof," *Dorosh v. Ashcroft,* 398 F.3d 379, 382 (6th Cir.2004) (internal quotation omitted). However, "supporting documentation must be provided only if it is of the type that would normally be created or available in the particular country and is accessible to the alien, such as through friends, relatives, or co-workers." *Id.* at 382–83 (internal quotation omitted). In a recent case, this Court found that the Albanian petitioners failed to meet their burden of proof where they failed to provide affidavits from relatives still living in Albania documenting their claims of persecution, and did not provide a reasonable explanation for that failure. *Liti,* 411 F.3d at 640.

■ After finding that her claim stated one of persecution on the basis of political opinion, a protected ground, the IJ concluded Petitioner had not met her burden to show it is more likely than not that she would be persecuted if returned to Albania. Noting that, where available, corroborative evidence should be presented, the IJ said Petitioner presented "extremely limited documentation, ... none of it ... authenticated according to the Code of Federal Regulations." (JA 175). Additionally, the IJ saw no nexus between the masked men who tied up Petitioner's family and her political activity, because there was no indication the men were politically, as opposed to criminally, motivated. Petitioner had presented no evidence that her family or any other social group to which she belonged was politically persecuted.

She did not explain why she did not seek asylum in Greece, where she had relatives, or in Canada, a country typically receptive to refugees. Nevertheless, the IJ concluded Petitioner testified credibly. However, even assuming Petitioner had told the truth, the IJ stated, her past experiences did not amount to "persecution as contemplated by such cases as" *In re Chen,* 20 I. & N. Dec. 16, 1989 WL 331860 (BIA 1989), and did not indicate she would be subject to future persecution if she returned to Albania. The BIA in Petitioner's case found no error in the IJ's opinion, and affirmed.

As an initial point, the Court notes that the IJ and the BIA erred in concluding that Petitioner had not suffered "persecution" because her ordeal was not as severe as the petitioner's in *Chen.* Mr. Chen was locked in a room with his grandmother for six months, where he was interrogated, kicked, and bitten by guards; was stoned at school and severely wounded; and was exiled to the country many times for "re-education," where he was denied medical care for other serious injuries. 20 I. & N. Dec. at 20. The BIA in that case called Mr. Chen "severely persecuted." Certainly *Chen* does not set forth a minimum standard of abuse required for a finding of "persecution."

However, even assuming without deciding that Petitioner did suffer past persecution in Albania, the Court nevertheless finds that substantial evidence supports the Board's decision, and that the record does not compel a contrary conclusion, considering Petitioner's failure to provide any corroborative evidence, and the changed circumstances in Albania. As the IJ noted, Petitioner provided "extremely limited documentation" and what she did provide was not properly authenticated. As in *Liti,* Petitioner has not explained her failure to supplement her own testimony

about her past persecution with the affidavits of relatives still in Albania, or even with properly authenticated documents demonstrating her political affiliation.[1]

Petitioner's argument on appeal that she should be entitled to withholding of removal because she suffered more severe persecution than the petitioner in *In re Mogharrabi*, 19 I. & N. Dec. 439, 1987 WL 108943 (BIA 1987), whose request for asylum was granted, is incorrect. Applicants for asylum face a "lower burden of proof" than those seeking withholding of removal, *id.* at 447, and the BIA in *Mogharrabi* saw no need to decide whether the petitioner in that case met the higher standard for withholding of removal, once it had granted him asylum. *Id.* at 449. *Mogharrabi* therefore sheds no light on Petitioner's claim.

### IV. Conclusion

For the reasons stated above, this Court finds the Board's decision is supported by substantial evidence and DENIES the petition for review.

---

1. It should be noted that Petitioner's party is now in power in Albania. U.S. Dep't of State, *Background Note: Albania,* http://www.state.gov/ r/pa/ei/bgn/3235.htm (Sept. 2005) ("The July 3, 2005 general elections were considered a step in the right direction in terms of Albania's consolidation of democracy. The Democratic Party and its allies returned to power in a decisive victory, pledging to fight crime and corruption, decrease the size and scope of government, and promote economic growth. Their leader, Sali Berisha, was sworn in as Prime Minister on September 11, 2005.")