**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 19a0631n.06

Case No. 19-3130

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| FIRAS KHAYRI NISSAN, | ) | |
| | ) | **FILED** |
| Petitioner, | ) | Dec 20, 2019 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| WILLIAM P. BARR, Attorney General, | ) | APPEALS |
| | ) | |
| Respondent. | ) | |

BEFORE: BATCHELDER, WHITE, and THAPAR, Circuit Judges.

PER CURIAM. Firas Nissan challenges the administrative decision denying his applications for immigration relief. We deny his petition for review.

Nissan is an Iraqi national and a Christian who reopened his removal proceedings to pursue withholding of removal and protection under the Convention Against Torture. Among other evidence, he submitted written statements (or "declarations") by three proposed experts on conditions in Iraq. The declarations opined that Nissan would be at a high risk of persecution or torture in his home country.

But the government objected that two of Nissan's experts—immigration lawyer Rebecca Heller and journalist Daniel Smith—weren't qualified to make such predictions. The immigration judge ("IJ") agreed, excluded Heller's declaration, and ignored the opinion statements in Smith's. But Smith's declaration also included factual statements from his firsthand experience and the IJ admitted those statements as nonexpert evidence. Ultimately, the IJ denied relief, finding in a

thorough opinion that Nissan wasn't a credible witness and hadn't proven multiple facts essential to his claims.

Nissan then challenged Heller and Smith's disqualification before the Board of Immigration Appeals ("BIA"). But the BIA didn't decide whether the IJ had erred because it determined the error (if there was one) was harmless anyway. The BIA found that to the extent Heller's and Smith's declarations discussed general conditions in Iraq, they were consistent and cumulative with other evidence in the record. It also noted that because hearsay is often admissible in removal proceedings, the wrongful exclusion of expert opinion evidence is less prejudicial than it would be under the Federal Rules of Evidence.

On appeal, Nissan once again argues that the IJ erred by disqualifying his experts. Because the BIA reviewed the IJ's decision and issued a separate opinion without adopting the IJ's reasoning, we review the BIA's decision, not the IJ's. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). And the BIA's explanations for why any error was harmless hold up.

*Heller's declaration.* Heller discussed armed conflicts among ISIS, the Iraqi government, government-allied Shia militias, and Kurdish militias. As relevant here, Heller emphasized that ISIS, Shia militias, government forces, and other non-state actors pose a threat to religious minorities and U.S.-affiliated Iraqis. Although Heller provided some additional anecdotes, these topics are amply covered in the record. So Heller's statement was cumulative.

*Smith's declaration.* The same goes for much of Smith's declaration. It too discussed ethnic and religious conflict in Iraq. One distinctive feature of Smith's declaration was his prediction that the Iraqi government would detain Nissan indefinitely on arrival and that he would probably be tortured while in detention. This prediction, Smith said, was based on what he'd

learned from his sources in the Iraqi government. The bulk of Smith's declaration summarized those conversations.

This is where the BIA's point about hearsay comes in. The IJ only excluded Smith's *opinion*: his bottom-line prediction that Nissan would probably be tortured. The *basis* of that prediction—what Smith's sources had told him about Iraqi customs practices—was before the IJ. And thanks to the relaxed evidentiary rules of removal proceedings, all of it could be considered for its truth. Thus, even if the IJ had accepted Smith as an "expert," the factual picture in the record wouldn't be different.

Moreover, the BIA did not rule on Heller and Smith's qualifications nor on the IJ's exclusion of their declarations. Instead, the BIA concluded that, even if the IJ erred by excluding the expert declarations, Nissan did not show the error resulted in sufficient prejudice. Nissan does not explicitly argue that the BIA erred in this determination; he argues that Heller's declaration provides information pertinent to "Nissan's fear of torture by the PMFs [the Shia militias]," and Smith's declaration provides "information about the risk of torture for criminal deportees in Iraqi prisons and detention centers." Petitioner Br. at 10–11. As discussed, Smith's observations were admitted and Heller's were cumulative. Thus, Nissan has not established that he was prejudiced by the exclusion.

Nissan also points to an IJ order granting deferral of removal to an Iraqi Chaldean Christian and to two BIA decisions remanding cases due to the exclusion or improper weighing of expert testimony, one of which dealt specifically with Heller and Smith.[1] Here, Nissan's claim is not technically one "that the BIA violated its own precedent; these decisions are unpublished and,

---

[1] One paragraph in Nissan's brief appears to quote a *published* BIA decision for the proposition "that Daniel Smith is appropriately considered an expert witness." Petitioner Br. at 15 (citing, and apparently quoting, *Matter of D-R-*, 25 I. & N. Dec. 445, 459 (BIA 2011)). But *D-R-* doesn't contain that language or anything else relevant to Nissan's argument. As far as we can tell, the BIA has never issued a published opinion mentioning Smith.

therefore, not formally binding on the agency." *Ishac v. Barr*, 775 F. App'x 782, 788 (6th Cir. 2019). The BIA does not give precedential value to its unreported decisions. *Jomaa v. United States*, 940 F.3d 291, 298 (6th Cir. 2019). Rather, Nissan's claim is that the BIA acted arbitrarily by denying his appeal while granting relief in similar situations.

In certain circumstances, the BIA's failure to explain inconsistent outcomes may raise "an inference of arbitrary decisionmaking." *Ishac*, 775 F. App'x at 788. As in *Ishac*, however, "here the reasons for the inconsistent outcomes are readily apparent." *Id.* at 789. In Nissan's case, the BIA concluded that the omitted testimony was cumulative and the omission non-prejudicial. The BIA decisions that Nissan cites reach no similar conclusion. As for the IJ order, a single decision by an IJ provides no basis to infer arbitrary action by the BIA.

No doubt, like cases should be treated alike, and an agency should explain itself when it changes or contradicts its own view of the law. But courts have also recognized that some degree of inconsistency "is unavoidable—after all, administrators are not automatons." *Henry v. INS*, 74 F.3d 1, 5–6 (1st Cir. 1996); *see also Zhang v. Gonzales*, 452 F.3d 167, 173 (2d Cir. 2006). Just as "one swallow doesn't make a summer," "one inconsistent precedent" doesn't make a decision arbitrary and capricious. *NLRB v. Sunnyland Packing Co.*, 557 F.2d 1157, 1160 (5th Cir. 1977).

And all this is assuming there's a conflict in the first place. Two cases that seem similar to us may not have looked that way to the IJs or BIA members who decided them. Maybe because the parties in the two cases pressed different issues. *Ishac*, 775 F. App'x at 789. Or maybe because they developed different evidence. *Ashafi v. Holder*, 418 F. App'x 447, 450 (6th Cir. 2011). Every removal proceeding rests on a unique factual record (as does every other sort of quasi-judicial administrative action).

In the end, Nissan hasn't shown that the BIA's decision was unlawful or irrational.  Thus, we deny his petition.