NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0839n.06
Filed: December 12, 2007

No. 06-3974

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

ZEWDITU WOLDEAREGAY DUBAL,

        Petitioner,

v.

MICHAEL V. MUKASEY, Attorney General[*],

        Respondent.

_____/

ON PETITION FOR REVIEW
FROM A FINAL ORDER OF THE
BOARD OF IMMIGRATION
APPEALS

Before:      KEITH and CLAY, Circuit Judges; STEEH, District Judge.[**]

        GEORGE C. STEEH, District Judge.

Zewditu Dubal, a citizen of Ethiopia, petitions for review of a Board of Immigration Appeals'

(BIA) order denying her application for asylum, withholding of deportation, and relief under the

United Nations Convention Against Torture (CAT).

Dubal entered the United States as a non-immigrant visitor on December 15, 2003, and four

months later, applied for asylum, withholding of deportation, and relief under the CAT. The BIA

affirmed an immigration judge's (IJ) denial of the application finding that Dubal had failed to meet

her burden of proving by substantial evidence that she was a "refugee," that is, "an alien who is

unable or unwilling to return to [her] home country 'because of persecution on account of race,

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Michael B. Mukasey, is automatically substituted for former Attorney General Alberto R. Gonzales.

[**] The Honorable George Caram Steeh, United States District Judge for the Eastern District of Michigan, sitting by designation.

religion, nationality, membership in a particular social group, or political opinion.'" *Mikhailevitch v. INS*, 146 F.3d 384, 389 (6th Cir. 1998) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (quoting 8 U.S.C. § 1101(a)(42)(A))). Dubal concedes she is removable, and advances two arguments in her *pro se* brief: (1) the BIA failed to consider record evidence that she was persecuted in Ethiopia while working as a journalist for Linkage Printing and Advertising; and (2) the BIA failed to consider that she was unlawfully arrested while in Ethiopia.

To reverse the BIA's decision, this court must conclude that substantial evidence in the administrative record "not only supports a contrary conclusion, but indeed compels it." *Mikhailevitch*, 146 F.3d at 388; 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrator's findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."). Dubal cannot prevail on her claims for withholding of deportation or relief under the CAT unless she prevails on her claim for asylum. *Sarr v. Gonzales*, 485 F.3d 354, 362 (6th Cir. 2007) (recognizing that a petitioner who fails to demonstrate entitlement to asylum cannot as a matter of law meet the more onerous burden for withholding of removal or the more stringent requirements of the CAT). To prevail on her claim for asylum, Dubal must show that she "has suffered actual past persecution or . . . has a well-founded fear of future persecution." *Mikhailevitch*, 146 F.3d at 389 (quoting 8 C.F.R. § 208.13(a)-(b) (1997)).

## I. Actual Persecution

Proof of actual persecution "requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Pilica v. Ashcroft*, 388 F.3d 941, 954 (6th Cir. 2004) (quoting *Mikhailevitch*, 146 F.3d at 390). Circumstances held not to constitute actual persecution include: an asylum applicant beaten at an Albanian government protest demonstration and suffering head injuries that

required a week-long hospitalization, and twice arrested and detained for a week while "sworn at" following two other protest demonstrations, *Pilica*, 388 F.3d at 954; an asylum applicant detained for a week by the Albanian government in 1999 while denied family contact and repeatedly threatened, and beaten four times in 1991 at different protest demonstrations, yet permitted to receive a college degree and work as an engineer, *Mullai v. Ashcroft*, 385 F.3d 635, 637 (6th Cir. 2004); and an asylum applicant subjected to KGB agents knocking at his residence for forty minutes at 1:00 a.m., and on several occasions having his residence and place of business searched. *Mikhailevitch*, 146 F.3d at 390. Dubal's claim of actual persecution alleges four instances that occurred in Ethiopia before she entered the United States on December 15, 2003: (1) a 1993 three-week detainment following a government protest demonstration; (2) a 1998 three-hour detention where she was subjected to repeated questioning and "physical abuse" following a constant police presence at her employer Linkage Printing & Advertising; (3) an April 2003 arrest and beating that "went on for awhile," the ransacking of her home, and a two-day detainment following a meeting of the Ethiopian Free Press Journalists Association (EFPJA) where Dubal claimed authorship of an article critical of the Ethiopian government; and (4) a week of persistent threatening phone calls beginning on November 7, 2003.

Dubal's allegations do not compel a finding that she suffered actual persecution in Ethiopia. *Mikhailevitch*, 146 F.3d at 388, 390; 8 U.S.C. § 1252(b)(4)(B). "[T]he court cannot reverse the [BIA's] determination simply because it would have decided the matter differently." *Gishta v. Gonzales*, 404 F.3d 972, 978 (6th Cir. 2005). Dubal's 1993 three-week detention is isolated by more than five years from her three-hour detention in 1998. Her claim that she was "physically abused" in 1998 is insufficiently detailed to support her petition. *Pilica*, 388 F.3d at 954. Dubal's arrest and two-day detainment in April 2003 is again isolated by a five year period, and her testimony that she

3

was beaten "for awhile" is also lacking in sufficient detail. *Id*. A document attached to Dubal's brief indicating that she was examined by a doctor on April 24, 2003, and found to have bruises and "about 1/4 of her hair . . . pulled out forcefully" was not presented to the IJ or the BIA, and cannot be considered by this court. *See* 8 U.S.C. § 1252(b)(4)(A). The week of threatening phone calls in November 2003 amounts only to verbal harassment and intimidation. *Pilica*, 388 F.3d at 954.

"Persecution is an extreme concept that does not include every sort of treatment our society regards as offensive." *Ali v. Ashcroft*, 366 F.3d 407, 410 (6th Cir. 2004) (citation and quotation marks omitted). Physical abuse that does not require medical treatment does not compel a finding of persecution. *See Kacaj v. Gonzales*, 132 F. App'x 584, 588 (6th Cir. 2005) (citing *Pilicia*, *Mullai*, and *Ali*). Consistent with this court's precedent's, Dubal's claims of a three-week detainment in 1993, a three-hour detention in 1998, and a two-day detainment and a week of harassing phone calls in 2003, accompanied by general claims of physical abuse that Dubal failed to document before the IJ or the BIA, do not compel a finding of actual persecution.

## II. Fear of Future Prosecution

Without the benefit of a presumption of future persecution arising from a finding of actual persecution, Dubal is required to show that she entertains a subjectively genuine and objectively reasonable fear of a "reasonable possibility" that she will be persecuted in Ethiopia based on her race, religion, nationality, membership in a particular social group, or political opinion. *Mikhailevitch*, 146 F.3d at 389; 8 U.S.C. § 1252(b)(4)(B). *See also Nikollbibaj v. Gonzales*, 232 F. App'x 546, 559 (6th Cir. 2007).

Dubal's fear of future prosecution is premised on her claimed membership in the EFPJA and an asserted political opinion critical of the Ethiopian government. Membership in the EFPJA does not constitute membership in a particular social group for purposes of asylum because members of

4

the EFPJA do not share a "common, immutable characteristic." *See Castellano-Chacon v. INS*, 341 F.3d 533, 546-47 (2003). The common trait of EFPJA members as journalists does not constitute a protected group for asylum purposes because "the 'concept of a refugee simply does not guarantee an individual a right to work in the job of his choice.'" *Id*. at 547 (quoting *Matter of Acosta*, 19 I. & N. Dec. 211, 233 (BIA 1985)). Evidence that Dubal was employed as a journalist for Linkage Printing and Advertising does not support a finding that she is a member of protected social group. Rather, Dubal's claim of future persecution is essentially a claim that she will be persecuted if she returns to Ethiopia due to her political opinion regarding freedom of the press.

The requisite objective component of fearing future persecution may be established by demonstrating a reasonable probability exists that either the petitioner will be singled out individually for persecution, or there is a pattern or practice of persecution to the identifiable group to which the petitioner belongs such that the fear of persecution is reasonable. *Akhtar v. Gonzales*, 406 F.3d 399, 404 (6th Cir. 2005) (quoting *Capric v. Ashcroft*, 355 F.3d 1075, 1085 (7th Cir. 2004) (citing 8 C.F.R. § 208.13(b)(2)(i), (iii)). Dubal does not argue, and the record does not support a finding, that a reasonable probability exists that she will be singled out for persecution upon returning to Ethiopia due to her commonly known political opinions. Dubal was beaten and then detained for two days in April 2003 only after she told arresting officials that she was the author of an otherwise anonymous article. Dubal has not proffered evidence of a pattern or practice of persecution in Ethiopia against those who advocate for freedom of the press. To the contrary, a State Department report on human rights in Ethiopia relied upon by the BIA supports a finding that no pattern or practice of persecuting free speech advocates exists in Ethiopia. *See Mullai*, 385 F.3d at 639 (holding that IJ may rely upon State Department reports). The record is lacking substantial evidence necessary to compel a conclusion that Dubal will suffer future persecution.

### III. Conclusion

Dubal's arguments that the IJ and BIA failed to fully consider the record evidence of her employment as a journalist and her arrests in Ethiopia are without merit. The decision of the BIA is **AFFIRMED**, and the petition is **DENIED**.