NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0873n.06

No. 10-3686

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

**Dec 21, 2011**

LEONARD GREEN, Clerk

QISHENG ZHANG,

   Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General

   Respondent.

)
)
)
)
)
)
)
)
)
)

ON PETITION FOR REVIEW FROM
THE BOARD OF IMMIGRATION
APPEALS

Before: GUY, KETHLEDGE, and WHITE, Circuit Judges.

**HELENE N. WHITE, Circuit Judge**. Petitioner Qisheng Zhang ("Zhang") seeks review of the Board of Immigration Appeals' ("BIA") dismissal of his claim for asylum. We affirm.

**I.**

Zhang was born in the Fujan Province of China in 1977. In August, 1998, prior to reaching the legal marriage age in China, Zhang married Xu Chin Tong ("Xu Chin") in a traditional ceremony. The couple did not register their marriage at this time. Xu Chin became pregnant shortly thereafter in December, 1998. Having a child outside the confines of a registered marriage is considered a violation of China's population control policies. Because the couple feared that family-planning officials would force Xu Chin to abort her child, Xu Chin went into hiding in March, 1999. Family planning officials ultimately found out about the pregnancy and went to the couple's home to search for Xu Chin. When the officials could not find Xu Chin they took Zhang into custody.

Zhang was detained for fifteen days until his family posted a 16,000 RMB bond. As a farmer, Zhang's annual income was between 7,000 and 10,000 RMB.

Xu Chin gave birth to her son on August 3, 1999. When family-planning officials found out about the birth, they kept the 16,000 RMB as a fine and forced Xu Chin to wear an IUD contraceptive device and undergo forced gynecological examinations.

Zhang and Xu Chin registered their marriage on October 21, 1999. Years later, the couple decided to have another child. Without permission, Xu Chin removed her IUD in January, 2006 and became pregnant one month later. On April 28, 2006, six family-planning officials arrived at the couple's home to take Xu Chin to her forced gynecological examination. When Zhang attempted to intervene the officials became physically confrontational. During the confrontation, Zhang pushed an official to the ground and the official hit his head on a table. As a result, the official had a bleeding wound. The other officials took Xu Chin and their wounded colleague to the hospital and Zhang to the family-planning office.

Under the pretense of using the restroom, Zhang escaped the family-planning office by climbing out of the bathroom window. That same day, Zhang learned that his wife had been forced to abort their child. Zhang went into hiding at his brother-in-law's house and learned that family-planning officials were inquiring about his whereabouts. Approximately two weeks later, Zhang came to the United States. Zhang's wife and son remain in China.

The New York Immigration Court issued Zhang a Notice to Appear on March 28, 2007. Zhang appeared with counsel and conceded removability but sought relief on the grounds of political asylum, withholding of removal, and the Convention Against Torture (CAT). The Immigration

Judge ("IJ") determined that Zhang's asylum application was untimely but also considered the merits of Zhang's application. Although Zhang was credible, the IJ found the evidence insufficient to demonstrate past persecution or a well-founded fear of future persecution. With respect to Xu Chin's first pregnancy, and her subsequent hiding, the IJ determined that Zhang's involvement in those actions did not constitute resistance. The IJ also found that the 16,000 RMB fine and fifteen-day detention were not imposed because of Zhang's opposition to China's family control policy. While the IJ did consider removal of Xu Chin's IUD and Zhang's physical resistance to the family planning officials acts of "other resistance," the IJ decided that Zhang's thirty-minute detention for injuring the family planning official did not rise to the level of persecution. Lastly, the IJ concluded that Zhang had not established a well-founded fear of future persecution based on a protected ground, but rather a fear of prosecution based on his violation of a law of general applicability - - assault of a family planning official.

The BIA upheld the IJ's decision on the merits and dismissed Zhang's appeal.

## II.

Pursuant to 8 U.S.C. § 1158(a), the Attorney General may grant asylum to refugees. A "refugee" is:

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion[.] 8 U.S.C. § 1101(a)(42)(A).

If an applicant demonstrates past persecution or a well-founded fear of future persecution based on a protected ground, the Attorney General may exercise his discretion and grant asylum. *Ouda v. INS*, 324 F.3d 445, 451 (6th Cir. 2003).

Congress amended INA § 101(a)(42) in 1996, adding the following provision:

> [A] person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion. *Id.*

Under the BIA's initial interpretation of this amendment, spouses of individuals forced to have an abortion or undergo involuntary sterilization were deemed persecuted. *In re C-Y-Z-*, 21 I. & N. Dec. 915 (BIA 1997). Eleven years later, the Attorney General overruled the BIA's interpretation and held that only the individual who is forced to have an abortion or sterilized, or is in fear of either occurrence, is *per se* a victim of persecution. *See Matter of J-S-*, 24 I. & N. Dec. 520, 523 (A.G. 2008). However, the Attorney General left open the possibility that spouses could be eligible for asylum under the statute by satisfying the "other resistance" prong. Under BIA precedent, "resistance" can encompass "a wide range of circumstances, including expressions of general opposition, attempts to interfere with enforcement of government policy in particular cases, and other overt forms of resistance to the requirements of the family planning law." *Matter of S-L-L*, 24 I. & N. Dec. 1, 10 (BIA 2006).

In addition to demonstrating "other resistance," an asylum petitioner must show they were persecuted on account of that resistance. *See Jiannong Jiang v. Holder*, 400 F. App'x. 859 (5th Cir. 2010). When considering whether the petitioner's experiences rise to the level of persecution "the IJ must view the evidence in the aggregate, as a collection of harmful events, even though they may not qualify individually as persecution, [that] may taken together constitute persecution." *Haider v. Holder*, 595 F.3d 276, 287 (6th Cir. 2010) (internal citations omitted). Nonetheless, persecution "requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Id.* at 286 (quoting *Mikhailevitch v. INS*, 146 F.3d 384, 390 (6th Cir. 1998)).

Zhang contends that impregnating his wife before they were legally married and helping her hide from Chinese family planning officials demonstrates "other resistance" to China's family control policies. However, the mere impregnation of one's girlfriend or spouse does not qualify as an act of resistance. *See, e.g., Zhang v. Ashcroft*, 395 F.3d 531, 532 (5th Cir. 2004); *Shi Liang Lin v. U.S. Dep't of Justice*, 494 F.3d 296, 313 (2d Cir. 2007). Additionally, even if we considered Zhang's efforts to hide his wife "other resistance," his fine and detention do not amount to persecution. *See, e.g., Dubal v. Mukasey*, 257 F. App'x 875 (6th Cir. 2007) (three detentions lasting for three weeks, two days, and three hours, along with one beating and a week of threatening phone calls did not constitute persecution); *Guo Qiang Hu v. Holder*, 318 F. App'x 348, 353 (6th Cir. 2009) (citing *Li v. Gonzales*, 405 F.3d 171, 178 (4th Cir. 2005) (fine of over one year's salary for having a child out of wedlock did not constitute persecution)).

While the IJ found that Zhang's attack of the family planning official was an act of resistance, the only consequence of Zhang's resistance was a thirty minute detention at the family-planning office. Zhang has not alleged that he suffered any physical violence or other type of harm during this thirty-minute period. Such a brief detention by itself does not rise to the level of persecution. *See Mohammed v. Keisler*, 507 F.3d 369 (6th Cir. 2007) (three-day detention without abuse followed by an incident involving a slap and kick was not persecution).

An asylum applicant who fails to demonstrate past persecution is not entitled to a presumption of future persecution and therefore must present evidence to substantiate a fear of future persecution. *Hegyi v. Gonzales*, 136 F. App'x 777, 779 (6th Cir. 2005). Zhang claims that if he is forced to return to China, he will be arrested and prosecuted because he injured a family-planning official. "A petitioner may . . . establish that prosecution reaches the level of persecution if the individual can demonstrate that the prosecution or criminal investigation 'was actually pretext for persecution' on account of one of the INA's enumerated grounds." *Cruz-Samayoa v. Holder,* 607 F.3d 1145, 1151 (6th Cir. 2010)*.* To determine whether pretext exists, we look at "the substance and context of the law that the native country is attempting to enforce." *Id.*

The IJ and BIA determined that Zhang could be validly prosecuted for assaulting or causing physical harm to a person charged with enforcing Chinese law. Zhang argues that there is no evidence that the government official Zhang injured was acting lawfully. Zhang also claims he should be granted asylum because Congress intended to afford refugee status to those who resist illegitimate laws and policies, such as China's coercive population control policy.

Although this circuit has not yet considered this issue, our sister circuits have found that the circumstances presented here do not support a well-founded fear of future persecution. *See, e.g.*, *Jiang*, 400 F. App'x 859 (finding petitioner's "potential prosecution for pushing the Chinese official cannot constitute future persecution because . . . [petitioner] has not showed that the potential prosecution for his admittedly criminal act would be pretextual, or based on a protected ground"); *Lin v. U.S. Attorney Gen.*, 555 F.3d 1310, 1316 (11th Cir. 2009) (no relief where fear of prosecution is based on striking a family-planning official and leaving China illegally because those are not statutorily protected grounds).

However, even if prosecution did rise to the level of persecution under these circumstances, Zhang has failed to demonstrate that he is likely to be prosecuted upon his return to China. There is no evidence that Chinese officials intended to arrest or prosecute him when they brought him to the family-planning office. Additionally, there is no evidence that Chinese officials have threatened to arrest Zhang upon his return. Zhang gave the following testimony during the immigration hearing:

> I believe if I return to China, the government will release me to local authority, especially to family planning official, and they will accuse me of attacking officials and also in violation of family planning policies. Later on they will probably put me in prison, or just - - will, will beat, beat me physically.

Yet, Zhang's additional testimony provides little support for his fear. Zhang testified that his wife informed him that family-planning officials came to their house to search for him after his escape. However, Zhang also stated he was not aware of an outstanding warrant for his arrest. Zhang further testified that it was not the entire Chinese government that would seek him out, but only the family-planning officials in his area and that he could avoid these officials by relocating to a different area.

Under the circumstances, Zhang's fear of prosecution is speculative. Moreover, we have previously recognized that "[a]n applicant does not have a well-founded fear of persecution if he could relocate to another part of his country of nationality to avoid persecution if, under all of the circumstances, it would be reasonable to expect him to do so." *Biriiac v. Holder*, 399 F. App'x 27, 35 (6th Cir. 2010).

Because Zhang has not demonstrated past persecution nor a well founded fear of future persecution, we **AFFIRM** the BIA's dismissal of his asylum claim.[1]

---

[1]Zhang did not appeal the BIA's denial of his claims for withholding of removal or relief under CAT. We note, however, that Zhang's failure to establish eligibility for asylum necessarily means he cannot satisfy the more stringent burden for withholding of removal and demonstrating a likelihood of torture upon his return to China.